UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON - TACOMA

WENDY J. COCHRAN and CHARLENE RIDDLE, on behalf of themselves and all persons similarly situated,

Plaintiffs,

vs.

GENERAL MOTORS LLC,

Defendants.

NO.

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

## I.      INTRODUCTION

1.      Plaintiffs Wendy J. Cochran and Charlene Riddle bring this class action against Defendant General Motors LLC ("GM") arising from the design, manufacture, marketing, and sale of defective Cadillac Lyriq electric vehicles ("Lyriq" or "Affected Vehicles").

2.      The Cadillac Lyriq suffers from defects in its electrical architecture, software systems, battery management modules, and vehicle control networks that can cause the vehicle to become nonfunctional or "bricked," rendering it incapable of starting, charging, or operating.

3.      When the defects manifest, the vehicle may become completely inoperable, requiring towing and prolonged dealer service.

4.      Owners nationwide have reported that Lyriq vehicles can become immobilized due to software failures, control module communication errors, battery management system failures, and charging system faults.

CLASS ACTION COMPLAINT

Page 1 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

5.    In many instances, dealerships are unable to repair the vehicles promptly, leaving vehicles inoperable for weeks or months.

6.    GM has long known of these defects through pre-release testing, internal engineering reports, warranty claims. dealership repair reports, NHTSA complaints, and/or consumer reports.

7.    Despite this knowledge, GM continued to market the Cadillac Lyriq as a reliable luxury electric vehicle, listing the vehicle at a premium price.

8.    GM failed to disclose the defects to consumers.

9.    As a result, Plaintiffs and class members purchased vehicles that are defective, unreliable, unsafe, and worth substantially less than represented.

10.    Plaintiffs purchased and/or leased a Cadillac Lyric based upon GM's false and misleading representations regarding the reliability of the vehicle.  Plaintiff's vehicle promptly experienced these failures and became completely inoperable, remaining at a dealership for an extended period without repair, and/or without adequate explanation or remedy on the part of GM. The actual vehicle purchased by Plaintiff is materially different from representations set forth in advertisements and marketing representations made by GM to consumers – and, is in fact unreliable, unsafe, and worth substantially less than represented.

11.    Plaintiffs bring this proposed class action on behalf of themselves and all other persons and entities nationwide who purchased or leased a Cadillac Lyric.

12.    Plaintiffs and members of the class all suffered damages as a result of GM's misrepresentations and omissions regarding these defects.  Plaintiffs and class members overpaid to purchase vehicles incapable of providing the balance of performance, efficiency and reliability that GM represented the Cadillac Lyric to offer.  Plaintiffs and the class members have also suffered diminution of vehicle value now that the existence of these defects have been revealed.  Accordingly, Plaintiffs and similarly-situated owners and lessees of the affected vehicles are entitled to compensation for their losses.

CLASS ACTION COMPLAINT

Page 2 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## II. PARTIES

11.    Plaintiff Wendy J. Cochran is a resident of Washington State.  Plaintiff purchased or leased a Cadillac Lyriq designed and manufactured by GM.  Plaintiff reasonably relied on GM's marketing and representations regarding the reliability and safety of the Lyriq. Unbeknownst to Plaintiff, at the time the vehicle was purchased, it was designed and manufactured with defects in its electrical architecture, software systems, battery management modules, and vehicle control networks that can cause the vehicle to become nonfunctional or "bricked," rendering it incapable of starting, charging, or operating.  After purchase, Plaintiff's vehicle experienced catastrophic electrical system failure consistent with the Lyriq defects.  The vehicle promptly became inoperable ("bricked") and required dealership service. Plaintiff was deprived of the use of the vehicle for an extended period. GM has failed to provide a timely or effective repair. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling and leasing the Lyriq with these known defects has caused Plaintiff damages including loss of vehicle use, diminished value, out-of-pocket costs and overpayment for a defective vehicle.  Had GM disclosed the defects, Plaintiff would not have purchased the vehicle or would have paid less for it.

12.    Plaintiff Charlene Riddle is a resident of Florida.  Plaintiff purchased a Cadillac Lyric or leased a Cadillac Lyriq designed and manufactured by GM.  Plaintiff reasonably relied on GM's marketing and representations regarding the reliability and safety of the Lyriq. Unbeknownst to Plaintiff, at the time the vehicle was purchased, it was designed and manufactured with defects in its electrical architecture, software systems, battery management modules, and vehicle control networks that can cause the vehicle to become nonfunctional or "bricked," rendering it incapable of starting, charging, or operating.  After purchase, Plaintiff's vehicle experienced catastrophic, ongoing electrical system failures consistent with the Lyriq defects.    The vehicle does not meet Defendant's representations regarding reliability, functionality, and suffers from ongoing issues regarding its electrical architecture, software systems, battery management modules, and vehicle control networks, including issues related

CLASS ACTION COMPLAINT

Page 3 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

to range, charging, screen malfunctions, delays when shifting into drive, rendering the vehicle entirely unreliable for daily use. regarding GM has failed to provide a timely or effective repair, and has instead advised Plaintiff that the vehicle's software was under-developed and required a "fix" that would not be available until some future, uncertain date. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling and leasing the Lyriq with these known defects has caused Plaintiff damages including loss of vehicle use, diminished value, out-of-pocket costs and overpayment for a defective vehicle.  Had GM disclosed the defects, Plaintiff would not have purchased the vehicle or would have paid less for it

19.     Defendant General Motors LLC is a Delaware limited liability company headquartered in Detroit, Michigan.  GM designs, manufactures, advertises, markets, and sells Cadillac vehicles throughout the United States.  GM placed the Lyriq into the stream of commerce with the knowledge expectation it would be purchased nationwide, including in Washington state.

### III. JURISDICTION AND VENUE

22.     This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000.00, exclusive of costs and interest; and minimal diversity exists.

23.     Minimal diversity exists for two independent reasons: (1) Plaintiffs and the Defendant are diverse; and (2) the proposed class contains citizens of states outside of Defendant's home jurisdiction.

24.     The Court has personal jurisdiction over Defendant because the alleged wrongdoing occurred in Washington, Defendant has sufficient minimum contacts with Washington, and Defendant has otherwise intentionally availed itself of the markets in Washington.

CLASS ACTION COMPLAINT

Page 4 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

25.    Venue is proper under 28 U.S.C. §1391 because Plaintiff Cochran resides in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant has caused harm to Class members residing in this District.

## IV. FACTUAL ALLEGATIONS

### A.    The Cadillac Lyriq

27.    The Cadillac Lyriq is Defendant GM's flagship luxury electric SUV.  GM marketed the Lyriq as a technologically advanced vehicle built on the Ultium electric vehicle platform.

28.    GM advertised, marketed and represented that the Lyriq offered cutting-edge software architecture, advanced electrical systems and reliable electric propulsion.

29.    Plaintiffs and similarly-situated consumers reasonably relied on these representations.

### B.    The Lyriq Electrical and Software Defects

31.    The Lyriq suffers from defects in its battery management systems, vehicle control modules, charging systems, electronic communication networks, and integrated vehicle software.

32.    These systems communicate through complex electronic networks.

33.    Defects in these systems can cause **communication failures between vehicle control modules.**

34.    When these failures occur, the vehicle may refuse to start, refuse to charge, display critical system errors, and/or disable propulsion systems.

35.    In severe cases the vehicle becomes completely inoperable.

36.    Owners frequently describe the vehicle as **"bricked."**

37.    The vehicle may require towing to a dealership.

38.    The Dealerships often struggle to diagnose the problem due to the existence of extensive, pervasive defects within the system architecture.

CLASS ACTION COMPLAINT

Page 5 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## C.    NHTSA Complaints

39.    Numerous owners have reported Lyriq electrical failures to the National Highway Traffic Safety Administration ("NHTSA").

40.    Complaints describe complete vehicle shutdown, an inability to start the vehicle, failure of battery systems, charging system failures, and repeated software faults.

41.    These complaints demonstrate that the defect is widespread.

## D.    Technical Service Bulletins

42.    GM has issued Technical Service Bulletins ("TSBs") related to Lyriq electrical and software defects.

43.    TSBs are communications sent by manufacturers to dealerships identifying known defects and recommended repairs.

44.    The issuance of these bulletins demonstrates GM's knowledge of the defects.

45.    Despite this knowledge, GM did not disclose the defects to consumers.

## E.    GM's Pre-Sale Knowledge

46.    GM knew of the defects prior to selling the vehicles.

47.    GM obtained knowledge through pre-production testing, engineering validation testing, warranty claim data, dealer repair reports and/or internal quality monitoring systems.

48.    GM also had access to detailed telematics data transmitted by Lyriq vehicles, which further revealed the defects.

49.    Despite this knowledge, GM continued selling the vehicles without disclosing the defects to consumers.

## F.    Plaintiff's Experience

50.    Plaintiffs purchased or leased a Cadillac Lyriq expecting a safe, reliable luxury vehicle, based on GM's marketing and advertising.  GM did not disclose the defects in the Lyriq to Plaintiff.  Had GM disclosed these defects, Plaintiffs would not have purchased the vehicle or would have paid less for the vehicle.

CLASS ACTION COMPLAINT

Page 6 |



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

51.     Plaintiffs' vehicles later suffered catastrophic electrical system failures, and/or became completely inoperable and unreliable for intended use.

52.     Plaintiffs' vehicles were delivered to a dealership for repair.

53.     Plaintiffs' vehicles remained at the dealership for an extended period without repair, and/or the repair offered by the dealership failed to remedy the defects.

54.     Plaintiffs have been deprived of the expected, ordinary use of their vehicles.

55.     GM has failed to provide an effective repair or replacement.  And, while GM has claimed to offer a "buy back" of Affected Vehicles, GM has intentionally delayed implementation of this program and/or delayed repayment to Plaintiffs in order to maximize profits (e.g., to capture the investment "float" from profits received).

**G.     Engineering Explanation of the Cadillac Lyriq Electrical Architecture Defect**

57.     The Cadillac Lyriq is built on General Motors' Ultium electric vehicle platform, which integrates high-voltage battery systems, vehicle propulsion systems, and numerous electronic control modules through a complex network of software and electrical communication systems.

58.     Unlike traditional internal combustion vehicles, modern electric vehicles depend on continuous digital communication among dozens of electronic control units ("ECUs") to operate fundamental vehicle functions.

59.     These ECUs manage essential systems including battery management, charging systems, propulsion control, braking and stability systems, vehicle safety systems, thermal management, infotainment, and telematics.

60.     The Lyriq's ECUs communicate through multiple Controller Area Network ("CAN") and Ethernet-based vehicle communication buses.

61.     These communication networks allow the ECUs to exchange real-time operational data required to operate the vehicle.

62.     <u>The Battery Management System</u>.  The Lyriq's propulsion system is powered by a large high-voltage lithium-ion battery pack.

CLASS ACTION COMPLAINT

Page 7 |



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

63.     The battery pack is controlled by a Battery Management System ("BMS") responsible for monitoring battery cell voltage, regulating battery temperature, managing charging and discharging cycles, and preventing over-current or over-voltage conditions.

64.     The BMS continuously communicates with other vehicle control modules, including the propulsion control module, the charging control module, and the vehicle control unit.

65.     These communications ensure that the vehicle can safely start, drive, and charge.

66.     If communication between these systems is interrupted or corrupted, the vehicle's safety protocols may automatically disable propulsion.

67.     Vehicle Controle Module Communication.  The Lyriq's architecture relies on a centralized vehicle control architecture in which multiple ECUs must authenticate and communicate with one another before the vehicle can operate.

68.     When the vehicle is powered on, several systems must complete a series of digital handshake and authentication procedures.

69.     These include communications between the Body Control Module, the Powertrain Control Module, the Battery Energy Control Module, and the Charging Control Module.

70.     If these modules fail to communicate properly, the vehicle's software may interpret the condition as a safety fault.

71.     When this occurs, the system may disable the vehicle to prevent perceived electrical damage.

72.     Software-Dependent Vehicle Operation.  The Lyriq relies heavily on software-defined vehicle architecture, which controls power delivery, battery operation, charging behavior, and vehicle start authorization.

74.     These functions depend on stable firmware and operating software across numerous control modules.

CLASS ACTION COMPLAINT

Page 8 |



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

75. Errors in this software environment can cause modules to enter fault states or communication failures.

76. <u>The Defect in the Lyriq Electrical Architecture</u>. The Lyriq suffers from defects in its integrated electrical architecture and software control systems.

77. These defects cause failures in communication among key vehicle control modules.

78. When these communication failures occur, the vehicle's safety systems may disable propulsion or charging functions.

79. As a result, the vehicle may become completely inoperable.

80. Owners frequently describe this condition as the vehicle being "bricked."

81. In this state, the vehicle may refuse to power on, refuse to enter drive mode, refuse to charge and/or display critical system warnings.

82. In many instances the vehicle cannot be restarted.

83. The vehicle must then be towed to a dealership.

84. <u>Cascading Module Failures</u>. When communication failures occur within the Lyriq architecture, faults may cascade across multiple modules.

85. For example, a communication failure between the Battery Energy Control Module and other systems may cause the vehicle control system to interpret the battery as unsafe.

86. In response, the system may disable propulsion.

87. Similarly, software faults within the charging control system may prevent the battery from accepting a charge.

88. Because the Lyriq relies on tightly integrated software systems, failures in a single module may propagate across the network.

89. <u>Difficulties in Diagnosing and Repairing the Defect</u>. The Lyriq's architecture is highly complex and dependent on synchronized software across numerous modules.

CLASS ACTION COMPLAINT

Page 9 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

90.     When communication faults occur, dealerships may struggle to identify the root cause.

91.     Repairs often require firmware updates, module reprogramming, and/or replacement of control modules.

92.     Even after such repairs, vehicles may experience recurring failures.

93.     As a result, some vehicles remain inoperable for extended periods.

94.     Over-the-Air Software Updates.  GM designed the Lyriq to receive over-the-air ("OTA") software updates.

95.     These updates modify firmware across multiple vehicle modules.

96.     Improper synchronization between module software versions can introduce system instability.

97.     OTA updates can therefore trigger communication mismatches between modules.

98.     When such mismatches occur, the vehicle may enter a fault state.

99.     High-Voltage System Safety Lockouts.  Electric vehicles incorporate safety mechanisms designed to prevent high-voltage system damage.

100.    These mechanisms may automatically disable propulsion if system faults are detected.

101.    Because the Lyriq defect causes erroneous system faults, these safety mechanisms may trigger unnecessarily.

102.    When this occurs, the vehicle may become permanently disabled until serviced by a dealership.

103.    Evidence of the Defect in Consumer Complaints.  Owners of Cadillac Lyriq vehicles have reported numerous incidents in which vehicles became completely inoperable.

104.    These complaints frequently describe sudden electrical failures, inability to start the vehicle, charging system malfunctions and/or prolonged dealer repair attempts.

CLASS ACTION COMPLAINT

Page 10 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

105.    These reports are consistent with failures in the vehicle's integrated electrical architecture.

106.    GM's Ability to Detect the Defect.  GM collects extensive operational data from Lyriq vehicles through onboard telematics systems.

107.    These systems transmit vehicle diagnostic information to GM.

108.    This information includes fault codes, module communication errors, and battery management data.

109.    This data would have revealed the existence and frequency of the defects.

110.    GM therefore knew or should have known that the Lyriq contained systemic defects.

111.    The Defects Exist in All Class Vehicles.  The Lyriq defects arise from the vehicle's fundamental electrical architecture and software systems.

112.    Because these systems are common across all Lyriq vehicles, the defects affect the entire class of vehicles.

113.    The defects therefore present a common issue suitable for class treatment.

114.    Failure to Provide an Adequate Remedy.  GM offers no actual remedy, repair or replacement to address these widespread defects.  And, while GM has claimed to offer a "buy back" of Affected Vehicles, GM has intentionally delayed implementation of this program and/or repayment to consumers in order to maximize its own profits (e.g., to capture the investment "float").  To add insult to injury, GM has offered no reimbursement to consumers who purchased and/or leased Affected Vehicles for out-of-pocket expenses, loss of use, and loss of value.  Because no bona fide repair is available, vehicle owners and lessees are left without a safely operable vehicle for an unknown and potentially lengthy period.

115.    **V. CLASS ACTION ALLEGATIONS**

116.    Plaintiffs bring this action under Federal Rule of Civil Procedure 23, on behalf of: (1) all persons or entities who are current or former owners and/or lessees of an Affected Vehicle; (2) all persons or entities in the state of Washington who are current or former owners

CLASS ACTION COMPLAINT

Page 11 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

and/or lessees of an Affected Vehicle; (2) all persons or entities in the state of Florida who are current or former owners and/or lessees of an Affected Vehicle.

117.    Excluded from the Classes are: (i) GM and any entity in which GM has a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; and (ii) the judge to whom this case is assigned and any member of the judge's staff or immediate family.

118.    Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class Members.  Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries suffered by Plaintiffs and/or the Class Members.

119.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

120.    Numerosity; Federal Rule of Civil Procedure 23(a)(1).  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiffs are informed and believe that there are at least hundreds if not thousands of members of the Classes, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Defendant's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

121.    Commonality; Federal Rule of Civil Procedure 23(a)(2).  Common questions of law and fact exist as to all Class Members, and include (a) whether the Lyriq contains a defect; (b) whether Defendant knew or should have known of the defect; (c) whether Defendant concealed the defect; (d) whether consumers overpaid for the purchase and/or lease of their vehicles, in light of the undisclosed defect; (e) whether Defendant's conduct, as alleged in this Complaint, violated consumer protection statutes and common law.

CLASS ACTION COMPLAINT

Page 12 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

122.    Typicality; Federal Rule of Civil Procedure 23(a)(3).    Plaintiffs' claims are typical of the claims of the Class Members who Plaintiff seeks to represent, because Plaintiffs and each Class Member purchased and/or leased an Affected Vehicle and were comparably injured through Defendant's wrongful conduct as described herein.

123.    Adequacy; Federal Rule of Civil Procedure 23(a)(4).    Plaintiffs will fairly and adequately protect all Class Members.    Plaintiffs' interests do not conflict with the interest of the Class Members.    Further, Plaintiffs have retained counsel competent and experienced in complex class action and consumer protection litigation, and Plaintiffs intend to prosecute this action vigorously.    Therefore, the interests of the Class Members will be fairly and adequately protected.

124.    Predominance of Common Issues; Federal Rule of Civil Procedure 23(b)(3). Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive and declaratory relief, as described herein, with respect to each Class as a whole.

125.    Superiority; Federal Rule of Civil Procedure 23(b)(3).    A class action is superior to other methods for the fair and efficient adjudication of the claims presented by this Complaint. In this regard, the Class Members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against a large corporation such as GM. It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or contradictory judgments, and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties. The Classes are ascertainable and the same common documents and testimony will be used to prove Plaintiffs' claims as well as the claims of the Class Members. Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

CLASS ACTION COMPLAINT

Page 13 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

126.    Accordingly, the proposed class fulfill the criteria of Federal Rule of Civil Procedure 23, and certification of the above-defined class is appropriate.

### V. FRAUDULENT CONCEALMENT ALLEGATIONS

127.    Plaintiffs makes the follow specific fraud allegations with as much specificity as possible at this stage of the litigation.

128.    Who: Defendant actively concealed the defects present in the Affected Vehicles from Plaintiffs and the class members when GM continued to manufacture, distribute, sell and lease the Affected Vehicles. At this stage of the litigation, Plaintiffs are unaware of and therefore cannot specifically identify the true names and identities of specific official responsible for such decisions.

129.    What: Defendant knew, or were reckless or negligent in not knowing, that the Affected Vehicles contained the defects as alleged herein. Defendant concealed the defects from Plaintiffs and the class members and made misrepresentations regarding the true character, quality, performance, reliability and nature of the Affected Vehicles.

130.    When: Defendant concealed material information regarding the defects at all times, and has not taken any action to inform consumers about the true character, quality, performance, reliability and nature of the Affected Vehicles.

131.    Where: Defendant concealed material information regarding the true character, quality, performance, reliability and nature of the Affected Vehicles in connection with every sale and lease transaction involving Affected Vehicles at least in the United States, if not worldwide. Plaintiffs are aware of no communication, document, or other interaction with anyone outside of GM before the date of filing of this Complaint, in which GM disclosed the true nature of these defects in each and every Affected Vehicle. The existence of these defects in the Affected Vehicles was not disclosed in GM's marketing, warranties, documentation, website, or any communications with Plaintiff and vehicle owners.

132.    How: GM concealed material information regarding the defects at all times prior to the date of this Complaint, including that the existence of the defects affects the character,

CLASS ACTION COMPLAINT

Page 14 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

quality, performance, reliability and nature of the Affected Vehicles. GM actively concealed the truth about the existence and nature of the defects from Plaintiffs and class members, even though GM knew that information regarding the defects would be important to a reasonable consumer. GM falsely reported the character, quality, performance, reliability and nature of the Affected Vehicles within its sales and marketing materials distributed and viewed by consumers and regulators.

133.    Why: GM concealed material information about the defects in Affected Vehicles for the purpose of inducing Plaintiffs and class members to continue to and repeatedly purchase and/or lease Affected Vehicles, rather than purchasing and/or leasing competing vehicles. If GM had disclosed the truth about the defects, then Plaintiffs and class members would not have purchased the Affected Vehicles or would have paid less.

## V. TOLLING OF STATUTE OF LIMITTIONS

134.    Fraudulent Concealment Tolling.  Prior to the date of this Complaint, Defendant knew of the defects in the affected vehicles, but continued to distribute, sell, and/or lease the affected vehicles to Plaintiffs and class members. In doing so, Defendant concealed from or failed to notify Plaintiffs and the class members about the true nature of the affected vehicles. Any applicable statute of limitations has therefore been tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein.

135.    Estoppel.  Defendant was under a continuous duty to disclose to Plaintiffs and the class members the existence of these defects, which substantially affect the true character, quality, performance and nature of the Affected Vehicles.  Defendant actively concealed the true character, quality, performance and nature of the defects in the Affected Vehicles, and Plaintiffs and the class members reasonably relied upon Defendant's knowing and active concealment of these facts.  Defendant is thus estopped from relying on any statute of limitations in defense of this action.  For these same reasons, Defendant is estopped from relying on any warranty mileage and/or age limitations in defense of this action.

CLASS ACTION COMPLAINT

Page 15 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

136.    Discovery Rule. The claims for relief alleged herein did not accrue until Plaintiffs and the class members discovered that the Affected Vehicles contained these defects. Despite their exercise of due diligence, Plaintiffs and the class members were not reasonably able to discover the defects until after they purchased or leased the Affected Vehicles, and after suffering catastrophic, cascading defects in their vehicles. Accordingly, their claims for relief did not accrue until they discovered that the defects substantially impaired the true character, quality, performance, reliability and nature of the Affected Vehicles.

## VII. CAUSES OF ACTION

### COUNT I
Washington Product Liability Act, RCW 7.72
(On Behalf of the Washington Class)

137.    As alleged above, the Affected Vehicles were not reasonably safe as designed due to the Lyriq's defective electrical architecture and software systems.

138.    The Affected Vehicles were not reasonably safe to an extent beyond that which would be contemplated by the ordinary consumer or user.

139.    The Affected Vehicles were not reasonably safe because GM did not provide adequate warnings and/or instructions with the Lyriq regarding the defective electrical architecture and software systems, or through the issuance of post-manufacture warnings and/or instructions to consumers.

140.    As a direct and proximate result of this wrongful conduct, Plaintiffs and the Classes have been damaged in an amount to be proven at trial.

### COUNT II
Washington Consumer Protection Act, RCW 19.86
(On Behalf of the Washington Class)

141.    As alleged above, GM provided, disseminated, marketed and otherwise distributed uniform false and misleading advertisements, data and other information to consumers regarding the performance, reliability, quality, and nature of the Affected Vehicles. And, GM knowingly and intentionally concealed from Plaintiff and the other Class members

CLASS ACTION COMPLAINT

Page 16 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

that the defects which substantially impaired the true character, quality, performance, reliability and nature of the Affected Vehicles.

142.    These practices were and are in violation of the Washington Consumer Protection Act, RCW 19.86.

143.    GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the other Class members, and/or failed to reveal facts that were material to the purchase or lease of the Affected Vehicles.

144.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Class members were deceived by GM's failure to disclose the defects in the Affected Vehicles.

145.    GM made material representations and statements of fact to Plaintiff and the Class members that resulted in Plaintiff and the Class reasonably believing the state of affairs to be other than it actually was regarding the character, quality, performance, reliability and nature of the Affected Vehicles.

146.    GM intended that Plaintiff and the other Class members rely on GM's misrepresentations and omissions, so that Plaintiff and other Class members would purchase or lease the Affected Vehicles.

147.    Plaintiff and other Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and misleading.

148.    GM knew or should have known that its conduct violated Washington's Consumer Protection Act.

149.    GM owed Plaintiff and the Class a duty to disclose the truth about GM's misrepresentations because GM: (1) possessed exclusive knowledge regarding the defects within the Affected Vehicles; intentionally concealed the defects from Plaintiff and the Class; and/or (3) made incomplete representations about the character, quality, performance, reliability and nature of the Affected Vehicles, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

CLASS ACTION COMPLAINT

Page 17 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

150. Had GM disclosed the omitted material or not misrepresented the characteristics of the Affected Vehicles, Plaintiffs and other members of the Class would not have purchased or leased the Affected Vehicles or would have paid less for them.

151. GM's unlawful and unfair practices in this regard affect the public interest.

152. As a direct and proximate result of this wrongful conduct, Plaintiffs and the Classes have been damaged in an amount to be proven at trial.

**COUNT III**
Florida Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201
(On Behalf of the Florida Class)

153. As alleged above, GM provided, disseminated, marketed and otherwise distributed uniform false and misleading advertisements, data and other information to consumers regarding the performance, reliability, quality, and nature of the Affected Vehicles. And, GM knowingly and intentionally concealed from Plaintiff and the other Class members that the defects which substantially impaired the true character, quality, performance, reliability and nature of the Affected Vehicles.

154. Plaintiffs bring this claim on behalf of themselves and the Florida Class.

155. Plaintiffs and the Florida Class are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.201, *et seq*.

156. Defendant engaged in "trade or commerce within the meaning of the FUDTPA, Fla. Stat. § 501.201, *et seq*.

157. Defendant engaged in "trade or commerce" within the meaning of the FUDTPA, Fla. Stat. § 501.201, *et seq*.

158. The FUDTPA prohibits *inter alia* "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. By concealing defects which substantially impaired the true character, quality, performance, reliability and nature of the Affected Vehicles, Defendant participated in unfair and deceptive trade practices in violation of the FUDTPA.

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

159.    In the course of its business, Defendant concealed these defects, as described herein, and otherwise engaged in activities with a tendency or capacity to decide.  Defendant also engage in unlawful trade practice by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of the Affected Vehicles.

160.    By failing to disclose and actively concealing these defects in the Affected Vehicles, which Defendant marketed as safe, reliable, of high quality, and fit for ordinary use as elective vehicles, Defendant engaged in unfair and deceptive business practices in violation of the FUDTPA.

161.    In the course of Defendant's business, it willfully failed to disclose and actively concealed the risks posed by and true nature of the defects in the Affected Vehicles.

162.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Florida Class members, about the true safety, reliability, and nature of their vehicles.

163.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with the intent to mislead Plaintiffs and the Florida Class.

164.    Defendant knew or should have known that its conduct violated the FUDTPA.

165.    Defendant made material statements about the safety, reliability and nature of the Affected Vehicles that were either false or misleading.

166.    Defendant owed Plaintiffs and the Florida Class a duty to disclose the true safety, reliability and nature of the Affected Vehicles.

167.    Because Defendant fraudulently concealed these defects as well as the true nature of the Affected Vehicles, Plaintiffs and Florida Class members were deprived of the benefit of their bargain since the vehicles they purchased and/or leased were worth less than they would have been if they were free from defects.  Had Plaintiffs been aware of the defects

CLASS ACTION COMPLAINT

Page 19 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

in their vehicles, they either would not have bought or leased their vehicles, or would have paid less for them.

168.    Defendant's concealment of the defects in the Affected Vehicles was material to Plaintiffs and the Florida Class.

169.    Plaintiffs and the Florida Class suffered ascertainable loss caused by Defendant's misrepresentations and concealment.

170.    Defendant's violations present a continuing risk to Plaintiffs and the Florida Class, as well as to the general public.  In particular, Defendant has yet to offer any fix for the Affected Vehicles.  Defendant's unlawful acts and practices complained of herein affect the public interest.

171.    As a direct and proximate result of Defendant's violations of the FUDTPA, Plaintiffs and the Florida Class have suffered injury in fact and/or actual damages.

172.    Plaintiffs and the Florida Class are entitled to recover their actual damages, pursuant to the FUDTPA, Fla. Stat. § 501.201, *et seq*.

173.    Plaintiffs and the Florida Class also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FUDTPA, Fla. Stat. § 501.201, *et seq*.

**COUNT IV**
Magnuson-Moss Warranty Act, 15 U.S.C. § 2301
(On Behalf of All Classes)

174.    Plaintiffs incorporate by reference the allegations set forth above, and further alleges that GM provided written warranties promising the vehicles would be free from defects.

175.    The Affected Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15, U.S.C. § 2301(3).  Plaintiffs and Class members are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

CLASS ACTION COMPLAINT

Page 20 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

176. GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

177. 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

178. GM provided Plaintiffs and Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, GM warranted that the Affected Vehicles were fit for their ordinary purpose as safe, reliable, efficient motor vehicles and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

179. GM breached its implied warranties, as described in more detail herein, and is therefore liable to Plaintiff and Class members pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Affected Vehicles share a common defect in that they are all equipped with defective electrical architecture and software systems. These defects rendered the Affected Vehicles, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

180. GM failed to perform the sort of testing that any responsible vehicle manufacturer would have done prior to launching the Affected Vehicles, thus GM knew or should have known of the defect. Yet, in order to pad its bottom line and launch a line of luxury electric vehicles, at a premium price, GM intentionally or recklessly foisted the defective Affected Vehicles on Plaintiff and unwitting Class members.

181. Any effort by GM to limit the implied warranties in a manner that would exclude coverage of the Affected Vehicles is unconscionable, and any such effort to disclaim or otherwise limit such liability is null and void.

182. Any limitations GM might seek to impose on its warranties are procedurally unconscionable. There was unequal bargaining power between GM and Plaintiff (and Class

CLASS ACTION COMPLAINT

Page 21 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

members), as, at the time of purchase and lease, neither Plaintiffs nor Class members had any other options for purchasing warranty coverage other than directly from GM.

183.    Any limitations GM might seek to impose on its warranties are substantively unconscionable. GM knew that the Affected Vehicles were defective and could spontaneously become nonfunctional or "bricked," rendering it incapable of starting or charging, yet failed to disclose this defect to Plaintiffs and the Class. Thus, enforcement of the durational limitations on the warranties is harsh and would shock the conscience.

184.    Plaintiffs and Class members have had sufficient direct dealings with either GM or its agents (dealerships) to establish privity of contract. Nonetheless, privity is not required here because Plaintiff and Class members are intended third-party beneficiaries of contracts between GM and its dealers, and specifically, of GM's implied warranties. The dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Affected Vehicles are dangerous instrumentalities due to the aforementioned defect.

185.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and is not required to give GM notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

186.    Plaintiffs and Class members would suffer economic hardship if they returned their Affected Vehicles but did not receive the return of all payments made by them. Because GM will not acknowledge any revocation of acceptance and immediately return any payments made, Plaintiffs and Class members have not re-accepted their Affected Vehicles, if they have retained them.

187.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

CLASS ACTION COMPLAINT

Page 22 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Plaintiffs, individually and on behalf of all other Class members, seeks all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the Class members in connection with the commencement and prosecution of this action.

188.    Plaintiffs also seek the establishment of a GM-funded program for Plaintiffs and Class members to recover out-of-pocket costs incurred in attempting to rectify and/or mitigate the effects of the defects in their Affected Vehicles.

**COUNT V**
Breach of Express Warranty
(On Behalf of All Classes)

189.    Plaintiffs incorporate by reference the allegations set forth above, and further alleges that GM expressly warranted the Lyriq against defects.

190.    The vehicles were defective and GM failed to repair them.

191.    As a direct and proximate result of this wrongful conduct, Plaintiffs and the Classes have been damaged in an amount to be proven at trial.

**COUNT VI**
Breach of Implied Warranty of Merchantability
(On Behalf of All Classes)

192.    Plaintiffs incorporate by reference the allegations set forth above, and further alleges that vehicles that become inoperable due to electrical defects described herein are not fit for their ordinary purpose.

193.    As a direct and proximate result of this wrongful conduct, Plaintiffs and the Classes have been damaged in an amount to be proven at trial.

CLASS ACTION COMPLAINT

Page 23 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## COUNT VII
Fraudulent Concealment
(On Behalf of All Classes)

194.   As detailed above, GM knowingly concealed the defects from Plaintiffs and the Class members, each of whom reasonably relied on GM's misrepresentations and omissions.

195.   GM's acts and omissions constitute fraudulent concealment or fraud by concealment.

196.   As a direct and proximate result of this wrongful conduct, Plaintiffs and the Classes have been damaged in an amount to be proven at trial.

## COUNT VII
Unjust Enrichment
(On Behalf of All Classes)

197.   As detailed above, GM received significant revenue from the sale of defective vehicles.

198.   GM's acts and omissions give rise to an action for unjust enrichment.

199.   As a direct and proximate result of this wrongful conduct, Plaintiffs and the Classes have been damaged in an amount to be proven at trial, including disgorgement of said profits.

## VIII. DAMAGES

200.   Plaintiffs and class members have suffered damages including overpayment for defective vehicles, loss of vehicle use, diminished resale value, repair costs, and incidental damages.

201.   Plaintiffs seek treble damages under RCW 19.86.090, on behalf of the Washington Class.

## IX. INJUNCTIVE RELIEF

202.   Plaintiffs seek an order requiring GM to disclose the defect, repair the defect, notify consumers of the defect, and provide restitution.

CLASS ACTION COMPLAINT

Page 24 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## X. RESERVATION OF RIGHTS

203.    Plaintiffs reserve the right to assert additional claims as may be appropriate following further investigation and discovery.

## XI. PRAYER FOR RELIEF

Plaintiffs request that the Court:

A.    Certify the Class;

B.    Appoint Plaintiffs as Class Representatives;

C.    Award appropriate relief, to include all compensatory, punitive and other damages as permitted by applicable law;

D.    Award treble damages under Washington law, RCW 19.86.090;

E.    Award restitution and disgorgement of revenues or profit;

F.    Award costs, reasonable attorneys' fees, and statutory interest under any applicable law, or other grounds in equity, including RCW 19.86.090 and/or Fla. Stat. § 501.201, *et seq*;

G.    That the Court award pre-judgment interest on items of special damages;

H.    That the Court award post-judgment interest;

I.    Award injunctive relief, including entry of an Order requiring GM to cease and desist from engaging in wrongful conduct and to engage in a corrective advertising campaign;

J.    Award such other, favorable relief as may be available and appropriate under law or at equity; and

K.    Enter such other and further relief as the Court deems just and proper.

## XII. JURY DEMAND

Plaintiff demands trial by jury as to all issues so triable.

CLASS ACTION COMPLAINT

Page 25 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

DATED this 2nd day of April, 2026.

PFAU COCHRAN VERTETIS AMALA, PLLC

By /s/ Darrell L. Cochran
   Darrell L. Cochran, WSBA No. 22851
   *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

Page 26 |

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654